Mitchel Randall Yawn v. Dorchester County And Mr. Bremer, are you out there? Yes, your honor. Good to have you with us. Thank you. May it please the court. Thank you, your honor. May it please the court, I am David Bremer for the appellants Mitch Yawn and Juanita Stanley. Your honors, Yawn and Stanley's bees and equipment are non-nuisance, non-dangerous property interests untainted by any law enforcement process. There's no blanket police power exception to a physical taking of this type of legitimate property interest and the killing of the bees is therefore subject to the same fact-based comprehensive analysis as any other physical taking of private property. But the district court ruling wrongly gave the county a categorical police power pass around the takings clause and in so doing, it short-circuited the normal takings inquiry in this case while immunizing the government from the takings clause in a wide array of future cases. As long as the government is smart enough to figure out how to ground a taking in the police power, it's immunized under this lower court ruling. I want to emphasize again that the property interests here are critical to understanding the scope of the police power. These bees, this is a licensed business, these bees and equipment are personal property protected by the takings clause, they've never been a nuisance, they're not harmful to anybody, and they cannot be subject to a police power exception. Rather, the taking analysis must include all the circumstances, including the burden on Mitch John and Juanita Stanley of this police power-based taking. And the problem for this court is not to decide whether a taking has actually occurred in this case, it's to allow Mitch John and Juanita Stanley to have their day in court on the takings analysis so that they can present the entire legal framework and inquiry to a court, rather than having the door slam shut based simply on the words police power. Mr. Bremer, this is Judge Thacker. Didn't the Supreme Court recognize the existence of a police power exemption in Lucas in circumstances closely analogous to this, at least that there was a grave threat to lives or property of others? No, Your Honor, I don't believe so. In fact, what the Supreme Court did in Lucas is say that if your property interest is a nuisance, then the government may have a defense to a takings claim, but it actually rejected the broader proposition that the district court adopted that the police no. The police power, just because you're trying to protect public health, safety, welfare, morals, that doesn't mean you can go around taking and destroying private property. You have to go through a takings analysis, and if you can prove that the property itself is a nuisance, then maybe you have a defense. But here, of course, there's no claim that these bees or this business is a nuisance. It's a licensed business. And I would point, Your Honor, again, in answer to your question, back to the Pennsylvania coal Mahone case in 1922, which is the quintessential and critical police power takings case, in which there in Mahone, the government was trying to stop coal mining under the land because they didn't want the land to fall in and hurt people living on a house on top of land. I mean, it's a quintessential police power action, and the Supreme Court said in Mahone, if it goes too far, if the police power action goes too far, it can still be a taking. So there's more to the analysis than just, well, it's a health or safety action. And does it matter to your analysis whether the death of the bees was incidental versus intended or foreseeable? Well, Your Honor, that may, the foreseeability may be a factor in the analysis. I mean, I guess my point is that the government here made efforts to make sure that people knew that this spraying was going to occur. They put the public notice in. They even, the person flying the plane even, I guess, omitted direct spray at this property. So it wasn't intentional. Does that matter? I mean, in fact, they took steps to make sure they didn't cause harm, undue harm. Right. I understand your question, Your Honor, and let me try and answer it. In the Ridgeline case from the Federal Circuit, which dealt with the difference between takings and torts, this is the leading case on this issue of a taking or tort. The Federal Circuit held that Maybe qualified immunity kicks in here somewhere. Excuse me, Your Honor? I said perhaps qualified immunity comes in here for acting in good faith. That sort of flows from the point I take from Judge Thacker's question. Right. And if I could finish my answer, I'm almost there. When a government action is, excuse me, when a property loss is the direct, natural, or probable result of an authorized activity, it is a taking and not a tort. And the problem here is that applies here. This is a direct, natural, probable result. But the problem here really is that we never got to these issues because the door was closed on us with the words police power. And I meant the county wants to argue that there was foreseeability or it's not intended. And they could argue that, but we didn't get to argue that because the court held that simply by virtue of the purpose of this action for health and safety, there is no further analysis. You property owner lose. There's nothing you can do about it. And that is a dramatic ruling that contradicts the if this police power ruling of the district court was the actual correct rule. It's not the government. Mr. Bramer, Mr. Bramer, Mr. Bramer, this is Judge Traxler. You might have not have argued this in the district court, but we have the authority to affirm for any reason appearing in the record. So you can argue right now as to whether not an intent at whether or not there can be a taking where the injury is unintentional. And I need to hear you on that subject as Judge Thacker asked you to please. Thank you, Your Honor. I'm going to answer it. Ridgeline 346 F 3rd 1346. The leading case in the federal circuit on the question that you're asking says this. It's a taking and not a tort. If the property loss is the direct, natural or probable result of an authorized activity. That is what happened here. This be kill with the direct natural probable result of an authorized spray. Therefore, it's not a tort. It's not incidental. It is a taking. That's the ridgeline case in Arkansas game and fish. Your Honor, the court indicated that if the action of the property loss is foreseeable, it is a taking here. This property lost the killing of the bees and the structure of their business was entirely foreseeable. So I understand your question, but we have a good and correct answer that this is a taking and not an incidental tort like loss. And therefore, we should be allowed to prove the elements of a takings claim and not have the analysis short circuit because of the health and safety and welfare purpose. I hope that answers your question on that issue. I would note even the COVID cases that property owners get a more comprehensive analysis of their takings claim than what we got below. The courts in COVID cases don't stop with well, we're trying to protect public health. They look at the burden on the property owner. They look at the loss of use and enjoyment, the invasion and a full analysis. And so we never really got that. And that's just simply not consistent with the Supreme Court taking jurisprudence. Yes, Judge Decker. Oh, I'm sorry. I don't have anything. I'm sorry. I thought I saw the light come on. Oh, we know that in this case, your honors, the county was aware that this pesticide was highly toxic to bees. They were also aware that it could kill them. That's why they tried to give notice and failed to give notice. This wasn't a random unauthorized action. This was a purposeful action to spray over private property. And that- Bees? You don't mean that. You don't mean that. They were trying to kill mosquitoes. Your honor, I didn't mean to say that they were intentionally setting out to kill bees. I said they intentionally set out to spray pesticide over property that had bees knowing that this pesticide kills bees and would likely harm any bees it touched. That's why they gave notice. So it was foreseeable that this would happen. I didn't say it was- they did it on- I said it's foreseeable. That's different. They did it purposefully. It sounds like it's a negligence case to me. Okay. I'm sorry for the misunderstanding. I say their action was purposeful. Their action was purposeful. The result was foreseeable. And that makes this a taking and not a tort. So what we're asking for is a chance to address these issues. If the government believes it has some kind of defense, then we should be allowed to address that below. But we need to be able to make our claims too. And that's this. This property is destroyed. There's a lot of damage. And there's no remedy right now for the- Don't you have other- do you have state law claims in this case? We- yes we do, your honor. We have state law claims. You said there's no other remedy. You just now said there's no other remedy. And you got other claims. Okay. There's no other remedy for this taking except just compensation. So we haven't been- I was going to finish my sentence. So we haven't been allowed to prove our entitlement to just compensation because the analysis was short circuited under this police power ruling. If the lower court's police power ruling is correct and you have to act under the eminent domain power to trigger a takings analysis, there would be no takings clause jurisprudence because every Supreme Court takings decision in the last 100 years has dealt with a police power action that's subject to a comprehensive takings analysis, including Arkansas Damage Fish, which is a and the government argued there. It was incidental. It wasn't- they didn't mean it. And the court applied the standard comprehensive fact-based analysis. And that's what we're asking for, rather than a blanket per se defense. Let us prove our case. And if there's no more questions, I will reserve the remaining time for rebuttal, your honors. Thank you very much, Mr. Bremer. Ms. Maybank. Thank you, your honor. May it please the court. My name is Amanda Maybank and I represent Dorchester County in this matter. The district court properly granted summary judgment on the federal constitutional taking pains in this case and should be should be affirmed. Contrary to the plaintiff's position, this case and the district court's order does not create a blanket police power exception to the takings liability. And the county has never advocated as such. In fact, in our motion for summary judgment, our position has been, one, we had to address that we were- what authority the county was acting under because the plaintiffs in their complaint alleged that the spray itself was unauthorized. And in fact, they even sought an injunction seeking the county from being able to conduct any further mosquito sprays. So we had to justify in response to the plaintiff's pleadings under which authority we acted. And that was the police power. The plaintiff's theory changed slightly and was alleged in there, which seemingly alleged an eminent domain theory, which was not applicable in this case. And the district court properly addressed that authority. Our position has also always been that this was not a foreseeable or an intended consequence of the spray. The district court, in her order, even says that the defendant argues it exercised its police power to protect the public from the mosquitoes and the Zika virus that they carry. Defendant further submits that it did not act affirmatively to take the bees for There wasn't- the law, first of all, there's been no determination that the bees died because a result of the spray. As your honors correctly noted, the county placed several notices in the local media outlets. The county had instructed the actual operator of the airplane who was conducting the spray to turn off the spray before it reached the beekeepers that were in the spray area. And the other beekeeper in the area did not suffer any harm to their bees as a result of the spray. So it's not contrary to Mr. Brevner's argument that this was direct and foreseeable. The simple fact that the other beekeeper in this area, a fact which the plaintiffs admit to in response to our summary judgment motion, is evidence that this was not a foreseeable or intended consequence. The county did not know that there was any problem with the Yon and Stanley's bees until after the fact when the spray had occurred. The district court properly utilized the guidance that was provided in the Supreme Court cases which say that the takings inquiry is a fact-specific and a case-by-case basis inquiry unless it is a one of the two bright line cases that have been recognized such as a permanent taking as in Loretto or as in Lucas where a regulation permanently deprives a property owner of all of all its economic value. This was not one of those cases. She took into consideration that we acted under the authority of the police power. Then she also took into the fact that we did the order notes that we placed the notices that the Clemson report, which is the body that came out and found that the spray was conducted pursuant to law. They found no violations. That Clemson report also could not conclude one way or the other if the spray contributed to the bee loss that the plaintiffs claim. The cases in such as Loretto, or excuse me, Letch, that is cited by the district court order. That in itself is, while she relies on that for the police to describe the police power, even that in itself is different than the facts of the case that we have here in the fact that Letch's house was damaged by the police in that police action. The action taken by the police was the direct and foreseeable consequence of the fact that there was a criminal inside. In this case, the plaintiff's property was just one of several that was in the area of this mosquito spray that was required because of the Zika cases. It was not a case in which the Dorchester County came to the plaintiffs and said, we have to spray your property and get rid of your bees because of a harm that they were causing. That's not the situation. This is just an unforeseen, unintended consequence, which has been recognized by the Supreme Court in Arkansas Game and Fish and in San Giannetti that in a takings analysis, it is relevant the degree to which the invasion is intended or is foreseeable result as a result of the authorized government action. In my brief, I do cite to the Columbia Basin Orchard case, which I found to be the most analogous to the case at hand and the fact that the government, there was an orchard that was at the base of a spring and it used that spring to irrigate its trees. In the vicinity of that spring, the government was making preparations to build a dam and encountered water and was siphoning off and the plaintiffs alleged that that excess water combined with the excess flooding, or excuse me, excess rain and winter runoff caused them to lose their orchard trees because the spring became contaminated with that excess rain. In that case, the court found that that was an unintended consequence and not a foreseeable result to the government's dam preparations and it recognized that if anything, the remedy for the plaintiff in that case would be in court, not in a constitutional taking. I think that brings us to the real issue here. The real issue is not whether we have the authority to conduct the spray. The plaintiffs are complaining about a specific action of the fact that Mr. Gaskins, who is the head of mosquito abatement for Georgetown County, admitted and as the district court found, he mistakenly did not call Mr. Yawn to tell him about the spray. That's the action that's being complained of in this case. At best, the county does not admit that there was any negligence, but at best, that's what the cause of action that the plaintiffs would have against the county would be a claim of negligence. There's not a constitutional taking. I don't believe it was the Supreme Court, but the district court has recognized that there's never been a case in which the Supreme Court has held that a mistake or an accident rose to the level of a constitutional taking. Ms. Maybank, this is Judge Traxler. Are you familiar with the case that Mr. Bremer mentioned in response to my question about whether or not a taking claim could be based on an unintentional act? The Ridgeline case? Are you familiar with that case? Yes, sir. Okay, and would you make a specific response to that please? In the Ridgeline case, this was also a flooding case. Sorry, Your Honor, one moment. Oh, yes, sir. In the Ridgeline case, the plaintiffs alleged that the storm drainage from a postal facility that was built by the government caused flooding onto their property and that it constituted a taking. I'm sorry, Your Honor. I'm trying to remember what the holding was in this case. Oh, let's see here. I'm sorry, Your Honor. I had the case here and I had it in my notes, but I didn't have a lot of information written down about it. Yes. Don't let that slow you down. You can go on to other parts of your argument as well, too. The court had to determine whether or not the increased runoff was a predictable result of the flooding. I think the court went on to hold that it was not intended in the fact that they had engineers that had studied the question before it was built and prepared the plans. I believe, Your Honor, that the holding was that if the engineers had predicted that that was going to be a case and that the flooding would have occurred, that would have been a factor in the case. I'm sorry, Your Honor. I got a little bit distracted by that, but the court did say that they had a look at what steps the government had taken to address the water runoff and the water retention and whether or not that would have been foreseeable or not. As the court has already recognized in this case, we did take steps to notify the public about the spray. We did take steps to minimize the amount of chemical that was sprayed in the area over the known beekeeper locations. In this case, Jan and Stanley were the only beekeepers that suffered allegedly any result. Again, we don't have a determination as the Clemson report was unable to determine one way or another whether or not the spray actually did cause the bee loss that Jan allegedly sustained. If there are no other questions, I will conclude that the district court should be affirmed that the district court's order does not create a blanket exception. The district court, using the guidance from Arkansas Game and Fish and the county had authority pursuant to the police power and that the loss of the bees was not a direct or foreseeable result of the spray and that it was incidental and unintentional. Also, as the court has recognized, this deals only with the federal constitutional claim and that plaintiffs still have a remedy in tort should they choose to proceed. If there are no other questions, I know I have some more time left. But you don't have to use all your time at all. When you're finished, you know when you're finished. All right. Well, if there are no other questions, then I will allow Mr. Brammer his time. Thank you very much, Ms. Maybank. We appreciate it. Thank you, Your Honor. Mr. Brammer? Yes, Your Honor. Thank you. Let's deal with this issue. Hello? Go ahead. Let's deal with the issue of intentionality in taking claims for one moment. It has never been the case that the government must intend to take property to give rise to a taking claim. In Lucas, in Mahone, in Nolan, in Palo Zolo, the government wasn't intending to take private property. It was regulating property, and a taking resulted or a claim was made that a taking resulted from its intentional act, not from intent to take. So let's get that aside for the moment. Intent is not an element. What is an element, though, a potential element, is what my co-counsel concedes, whether the action was foreseeable or predictable. That is a disputed fact question. The district court did not resolve that question. As I mentioned before, we didn't ever get to that because the language of the district court, the arguments were all about whether the police power purpose of the county itself absolves the county of the need to get into these other factors like foreseeability or predictability, and we never got there. So the Ridgeline case that our counsel was referring to, the leading case on this incidental or direct, it's been followed many times, it says this. If the property loss is the direct natural probable result of an authorized activity, which is a fact question I would think that the court didn't reach below, then it's a taking. So what needs to happen here is that this case needs to be remanded so that this fact question about predictability and foreseeability can be addressed and the other elements of a takings claim can be addressed as well, and the county will have a chance to try and prove that this wasn't foreseeable. I don't see how they can do that given the notice they tried to give and the labeling of the but they can try. And we can prove the opposite and we can also prove our damages and the effect and the destruction of business and the existence of the license, all the things that didn't happen below that still need to happen. So if there's no more questions, I will end that. Ridgeline should resolve this case in favor of remand. Well, thank you, Mr. Bremer. We appreciate it very much. With you and Ms. Maybank.
judges: Robert B. King, Stephanie D. Thacker, William B. Traxler Jr.